UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TEXAS INSTRUMENTS INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | 06 CV 2305 (SHS) (RLE) |
| | ) | ECF CASE |
| v. | ) | |
| | ) | |
| POWERCHIP SEMICONDUCTOR | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S REQUEST FOR RECONSIDERATION OF THE ORDER OF THE MAGISTRATE JUDGE

Defendant Powerchip Semiconductor Corporation ("Powerchip"), by and through

its counsel Venable LLP, respectfully submits this memorandum of law in support of its

request for reconsideration of the order issued by Magistrate Judge Ronald L. Ellis,

served on Powerchip and filed on May 25, 2007 (the "Order"), and attached hereto as

Exhibit A.

Specifically, Powerchip requests reconsideration of that part of the ruling that

grants Plaintiff Texas Instruments' request for preclusion of material produced by

Powerchip on March 21, 2007, consisting of 1,787 pages of mask tooling forms.[1]  The

---

[1] Powerchip notes that the Court ordered TI to submit an affidavit of its fees and costs in its successful motions, and such affidavit was filed by TI on June 5, 2007.  Insofar as the Order requires payment by Powerchip of TI's costs, including attorney's fees, incurred in filing the motions upon which TI prevailed, Powerchip further requests reconsideration on the basis that the special circumstances involved in the four preclusion motions make an award of expenses unjust.  First, Powerchip prevailed entirely on one motion (the second) and in part on a second motion (the first).  Moreover, had TI sought to meet and confer with Powerchip regarding its request to preclude the introduction of the masks and layout databases prior to filing, Powerchip would have agreed to refrain from introducing such materials into evidence at trial.  TI's fees and costs should at least be set off by Powerchip's costs in defending these motions.  Second, with respect to the fourth motion, the Court conceded that a bona fide dispute as to the meaning of TI's document requests was at the heart of the issue, and further conceded that there is no evidence of willfulness or bad faith on Powerchip's part.  Third, TI's fees and costs are unreasonable on their face.

basis of Powerchip's objection is that these documents were not responsive to TI's document requests, or in the alternative, Powerchip's delay in the production of these documents should have been excused due to a bona fide dispute as to the meaning of TI's document requests, or in the alternative. Production in the way demanded by TI would have been unduly prejudicial to Powerchip.

The Court has discretion to grant or deny a motion for reconsideration. See Devlin v. Transportation Communications Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999). Motions for reconsideration are governed by Local Rule 6.3 and Rule 59(e), and both rules evaluate such motions under the same standard. In re Evergreen Mutual Funds Fee Litigation, 240 F.R.D. 115, 117 (S.D.N.Y. 2007). A motion for reconsideration may be granted "only where the moving party demonstrates that the Court has overlooked factual matters or controlling precedent that were presented to it on the underlying motion and that would have changed its decision." In re Worldcom, Inc. Securities Litigation, 308 F. Supp.2d 214, 224 (S.D.N.Y. 2004); Colodney v. Continuum Health Partners, Inc., No. 03-7276, 2004 WL 1857568, at *1 (S.D.N.Y. Aug 18, 2004); see also In Re BDC 56 LLC, 330 F.3d 111, 123 (2d Cir. 2003). In addition, reconsideration may be granted to "correct a clear error or prevent manifest injustice." Banco de Seguros Del Estado v. Mutual Marine Offices, Inc., 230 F.Supp.2d 427, 428 (S.D.N.Y. 2002). Here, the Court overlooked the testimony of Mr. Telecky, which strongly suggested that TI's document requests were limited to the masks themselves and to the layout databases. See Telecky

---

Nevertheless, because the Order does not actually require Powerchip to pay TI's fees and costs, Powerchip reserves objections if and until such an order is given.

Dep., 109:21 through 111:20, and 114:7 though 117:25, included in Exhibit B attached hereto.

## SUMMARY OF RELEVANT FACTUAL AND PROCEDURAL HISTORY

Over the course of fact and expert discovery, TI filed a series of four motions to exclude documents produced by Powerchip. The first motion, in the form of a letter dated December 18, 2006, asked the Court to preclude Powerchip from introducing evidence that was responsive to TI's document requests. The Court denied preclusion of certain financial information for 2000 and 2001 produced by Powerchip in January 2007, but in its Order, granted the motion to the extent that Powerchip produced certain responsive documents after the close of fact discovery that had not been previously ruled on by the Court. The Court also granted TI's request to preclude us from relying on documents produced "on February 16, 2007."

The second motion, dated February 2, 2007 (supplemented February 8, 2007), asked the Court to preclude Powerchip from relying on certain SAP reports from the years 2000 and 2001. The Court denied TI's request on April 3, 2007.

The third letter, dated February 21, 2007, sought sanctions related to, *inter alia*, two interrogatories related to Powerchip's third party royalty payments. Powerchip objected to the interrogatory requests on grounds of burdensomeness. Following the April 3, 2007 conference, Powerchip submitted a declaration detailing the reasons why it should be excused from responding to the interrogatory requests. The Court nevertheless ordered Powerchip to produce SAP reports responsive to TI's interrogatories by July 27, 2007, or suffer adverse inferences.

-3-

TI sent the fourth letter on March 26, 2007. It concerned the production (on March 21, 2007) of several classes of documents after the filing of rebuttal reports (on March 20, 2007). This production included, in relevant part, mask tooling forms that Powerchip maintained were not requested by any of TI's document requests (because they were not within the definition of "manufacturing drawings and specifications"). The Court disagreed with Powerchip and ordered that such mask tooling forms be precluded as evidence at trial. TI also sought to exclude certain contacts that were produced after the close of discovery and certain specimens of chips, first produced concurrently with expert rebuttal reports. .

The Court's order was signed on May 24, 2007, but was not served on Powerchip until the morning of May 25, 2007, directly before the parties' pretrial conference before Judge Stein.

## POWERCHIP REQUESTS RECONSIDERATION OF THE ORDER

Reconsideration is respectfully sought on the issue identified herein.

The Order concludes that Powerchip should have produced the tooling forms because it was "on notice" that TI considered that the tooling forms were responsive to the document requests. It is respectfully submitted that the evidence presented did not support such a finding. To the contrary, Mr. Telecky of TI testified that he considered the term to mean the masks and layout databases. Mr. Telecky never suggested that tooling forms were encompassed in the requests. See Telecky Dep., 109:21 through 111:20, and 114:7 though 117:25.

While Powerchip recognizes that TI requested supplementation of the exemplary tooling form documents that were produced in November 2007, it is important to note

that when the parties were requested to attempt to narrow the discovery dispute relating

to the scope of the term "manufacturing drawings and specifications," Texas Instruments

did not indicate that it regarded these tooling forms as a "manufacturing drawing" that

should have been produced." It is submitted that Powerchip was never "on notice" that

TI considered these tooling forms responsive. As counsel for Powerchip explained,

Texas Instrument's document request seeking "manufacturing drawings and

specifications" was so broad that it would have encompassed rooms and rooms of

documents. Each layout database used to make a mask set would have filled a room. In

the discovery process the parties negotiated in good faith and were not able to come to an

agreement. At the end of the day, TI advised Powerchip that it considered the layout

databases and the masks as responsive to this request. However, TI never sought the

tooling forms and never put Powerchip on notice that it considered such documents

responsive.

These mask tooling forms were not produced in belated response to TI's

document requests. Rather, they were produced only because Powerchip gave them to its

expert, Dr. Peter S. Gwozdz, in order to rebut findings in TI's expert report. In its expert

report, TI surprisingly contends that Powerchip owed royalties on virtually all of

Powerchip's foundry sales. However, even under TI's interpretation of the term

"manufacturing drawings and specification" as used in the contract, if the purchaser of

the product was also the party who designed the circuit, the sale would fall under the

foundry exception clause.[2] In response to these contentions, Powerchip cited the tooling

_____

[2]  In addition, the foundry exception clause further required that the product be marked with the purchaser's
commercial indicia.

-5-

forms which help show that the design on the circuit (which is subsequently etched into a mask) was in whole or part derived by or on behalf of the customer. The first instance that Powerchip learned that TI considered these tooling forms as "manufacturing drawings" was the day it received the letter to the Court seeking preclusion of the evidence.

Powerchip has always maintained, and the Court observed, that the mask tooling forms were not specifically included in the definition of "manufacturing drawings and specifications." TI was aware that Powerchip contended that the term "manufacturing drawings and specifications" was vague and ambiguous (indeed, in our joint letter, the tooling forms were excluded from the agreed purview of the phrase). Powerchip's Mike Hsu testified that the term "manufacturing drawings" can include lots of different drawings, and proceeded to identify approximately six different kinds of drawings at length. Mike Hsu did not identify the tooling forms as "manufacturing drawings and specifications." Charlene Lei also testified that there are many different kinds of drawings. The problem with the TI's discovery request was that it was so broad that it would have elicited thousands and thousands of pages of documents. It is submitted that Dr. Gwozdz's characterization of the tooling forms as "mask documents" is not germane to the issue, which is whether or not the tooling forms are "manufacturing drawings."

The issue is not academic, because if the mask tooling forms should have been produced, then so should all of the other varieties of drawings discussed, which would be unduly burdensome for Powerchip. By way of illustration, Mr. Hsu testified that Powerchip maintains a record whenever a mask is received by Powerchip or destroyed by Powerchip. These documents can be referred to as "mask documents" but are not

"manufacturing drawings." See Deposition Testimony of Hsu, 43:1 through 44:3 and 51:23 through 52:5, included in Exhibit B attached hereto. Dr. Gwozdz testified that if all of the paper needed to produce simply *one* advanced chip, the volume of paper would fill an entire conference room. See Deposition Testimony of Gwozdz, 29:1 through 29:5, included in Exhibit B attached hereto. Powerchip should not have been expected to produce such volumes of paper, and Powerchip respectfully submits that it is unfair to sanction Powerchip for not responding to TI's vague and ambiguous document requests following such logic.

## CONCLUSION

For all of the foregoing reasons, Powerchip respectfully requests that the Court modify or set aside the Order of the Magistrate Judge served May 25, 2007, insofar as it precludes Powerchip or its experts from relying on the mask tooling forms produced on March 21, 2007, and that Powerchip be granted such other relief as this Court deems just and proper.

Dated:   New York, New York
         June 11, 2007

Respectfully submitted,

VENABLE LLP

By: _____

William D. McCracken (WM-1622)
405 Lexington Avenue, 56th Floor
New York, New York 10174
(212) 307-5500

-and-

Andrew C. Aitken (admitted *pro hac vice*)
Clifton E. McCann (admitted *pro hac vice*)
575 7th Street NW
Washington, DC 20004
(202) 344-4000

Attorneys for Defendant
POWERCHIP SEMICONDUCTOR CORPORATION

TO:   JONES DAY
      Barry R. Satine (BS-8785)
      Lynn M. Marvin (LM-2281)
      222 East 41st Street
      New York, New York 10017
      (212) 326-3939

      Attorneys for Plaintiff
      TEXAS INSTRUMENTS INCORPORATED